## THE CITY OF CORFUS CHRISTI v. JOHN WOESSNER.

SUPREME COURT, GALVESTON TERM, 1883.

*Constitution and statute construed—City debt.*—The issuance of warrants in current expenses of a city, which do not exceed the current revenue derived from taxation permitted by law to be levied to meet current expenses, and such other revenue as a city may have from other sources than taxation, is not the creation of a debt prohibited by law, unless a special tax be levied to meet the interest and create a sinking fund.

*Special fund.*—Article 372, while it provides for the creation of a special fund, does not contemplate that a fund not needed to pay current expenses may be placed in the hands of any officer of the corporation, to be used at his discretion as a compromise fund whereby money may be locked up that creditors ought to have until they may consent to discount claims, just in every respect, or the officer to whom the discretion is confided may see proper to pay them.

Appeal from Nueces County. Opinion by Stayton, J.

This action was brought by John Woessner against the city of Corpus Christi, upon forty-eight warrants drawn by the Mayor and Secretary of the city upon its treasurer. Thirty-two of the warrants, not interest bearing, were drawn upon claims which had been audited by the city council for matters pertaining to the current business and expenses of the city, of all of which the appellee had become the owner. Fifteen of the warrants were drawn in favor of officers of the city for current salaries, which had been fixed by the city council, which had directed that they should be interest bearing and they were so made upon their faces; of all of them the appellee had become the owner. The other warrant was drawn in favor of the appellee in cancellation and settlement of outstanding warrants of which he was the owner, which amounted to nearly double the sum for which the warrant was drawn. This warrant was made in-

terest bearing by order of the city council. All of the warrants were drawn to meet current expenses of the city during the years 1878 and 1879, and it appears that the taxes authorized by law to meet the current expenses of the city, with funds which it seems the city derived from certain wharf privileges, would have been more than sufficient to meet the current expenses and pay all of the warrants; but in the year 1879 the city, by what authority is not shown, appropriated ten thousand dollars of the revenue arising from its wharf privileges to assist in deepening Corpus Christi Pass. In the beginning of the next municipal year, April, 1880, appellant passed an ordinance, the third section of which, in substance, declares that all sums of money now in the treasury of the city, or that may come into its hands, from any source, (except school funds) be and are set apart and appropriated to meet current expenses; and the 11th section of said ordinance requires the city treasurer to transfer all balance in his hands belonging to the city (except school funds) to the current expense fund upon the books, and appropriating said fund for the expenses of the city, accruing from the 13th of April, 1880; and no warrant, scrip, or claim of debt, bearing date of issuance or approved prior to said 13th of April, 1880, shall be paid therefrom, except as may hereafter be provided.

March 8, 1881, appellant passed another ordinance to provide a sanitary, street and old-debt compromise fund, authorizing the Mayor to draw from the wharf company for the city $1,301.12, which sum is by said ordinance appropriated and made a special fund in the Mayor's hands for sanitary, street, and debt compromise fund, and to be expended by the Mayor for said purposes, or either of them, at his discretion.

May 2, 1881, appellant passed another ordinance, the 1st section of which, in substance, is as follows, "All the receipts, revenues, and collections due, or to become due, after March 31, 1881, or to be paid to said city from the Central Wharf and Warehouse company, it being intended by this section of this ordinance that every and all receipts of money from every or any source, belonging or coming to said city, shall be and are hereby appropriated to said current expense fund."

The 2nd section authorizes the Mayor, when in his judgment there is a surplus in the current expense fund, beyond any claim and incident to the paying of the current expenses of said city, its officers

and employes, to use said surplus in the liquidation by compromise or otherwise, of any old debt of said city of date prior to May 1st, 1880.

The 3rd section instructs and directs the treasurer to pay no warrant, draft, or check against said current expense fund of date previous to April 13, 1881.

It was admitted that the only provision made by the appellant for the payment of the warrants sued on, was the levy and assessing of an annual ad valorem tax of $\frac{1}{4}$ of 1 per centum at the time and in the manner required by law, and the levy and collection of the occupation taxes allowed by law; and that no special tax to pay the interest and to create a sinking fund of 2 per centum was ever levied, assessed, or collected by her.

It was shown by the treasurer of appellant, that the city had in the treasury $2,000 current expense fund, and the Mayor $1,000 of sanitary, street, and old debt compromise fund, and that it was receiving from the Wharf Company $1,000 quarterly in advance, beginning April 1, 1881, and ending in 1893.

Appellee presented his warrants to and made demand of payment both to the treasurer and Mayor, previous to bringing his suit, and payment was refused by the treasurer, and the Mayor offered to pay if appellee would scale one-half and wait twelve months for half of that half.

Appellant was incorporated under and by virtue of Title XVII, relating to cities and towns, chapters 1 to 10 inclusive, general laws of the State of Texas, and has less than ten thousand inhabitants, and so had at the date of the adoption of the general charter, April 5th, A. D. 1876.

The court rendered judgment for appellee for the total amount of said warrants, and for any interest expressed upon their face, and the judgment rendered also provided for peremptory mandamus to issue to the aldermen and officers of said city to pay over to appellee the surplus of revenues of said city, over her current and ordinary expenses, at the end of each year, until the whole judgment, with interest, is satisfied; and for injunction restraining said aldermen and officers of said city from paying out any funds for purposes other than ordinary current expenses of her local government until said judgment is satisfied.

It is claimed that all of the warrants were illegally issued, for the

reason that their issuance was the creation of a debt without making provision to assess and collect a sufficient sum annually to pay the interest thereon and create a sinking fund of at least two per cent. thereon, as it is contended it is required by section 5, article XI, of the constitution, and by article 427 of the Revised Statutes.

In the view which we take of this matter, it is important to enquire whether the sections of the constitution and statute referred to have any application to cities other than such as have more than ten thousand inhabitants. We are of the opinion that the issuance of warrants for current expenses of a city, which do not exceed the current revenue derived from taxation permitted by law to be levied to meet current expenses and such other revenue as a city may have from other sources than taxation, cannot be said to be the creation of a debt prohibited by law, unless a special tax be levied to meet the interest and create a sinking fund.

The evidence shows that the revenue of the city from the year 1879, if it had been applied to proper municipal purposes, would have been more than sufficient to meet the payment of the warrants sued upon, after paying all other current and proper expenses.

And it further appears that in addition to the money raised by taxation, permitted by law, to meet current expenses, the city has an income of four thousand dollars per year, for many years to come, from her wharf interests, and that from these two sources, at the time of the trial of this cause, there was a surplus in the treasury.

It is claimed, however, that the funds in the treasury belonged to special funds, set apart by ordinance to specific purposes and that they could not be disturbed for any other.

The statute does provide that special funds may be created for special purposes, R. S. 372; but this does not contemplate that a fund not needed to pay current expenses, may be placed in the hands of any officer of the corporation to be used at his discretion as a *debt compromise fund*, whereby money may be locked up, which creditors ought to have, until they may consent to discount their claims, just in every respect, or the officer to whom the discretion is confided may see proper to pay them.

The ordinance of 1880 practically prohibited the payment of any debt which accrued prior to April 13, 1880, as did that of 1881 prohibit the payment of any debt which accrued prior to April 13, 1881, and this without reference to the justice of the debt, or state of the

treasury, unless in the discretion of the officer intrusted with the only fund which the ordinances permitted to be so used, he should see proper to make a payment by compromise or otherwise.

Cities have power under the statute to issue to creditors interest bearing evidences of debt. R. S. 419. And it would seem that when, as in this case, the city has ample revenue, outside of that which the law authorizes to be levied to meet current expenses, to meet such obligations, that a tax for that purpose would not only be unnecessary, but unlawful. The remedy given to the appellee by the judgment of the court, to enforce the payment of his debt, appears to be proper.

The judgment is affirmed.